# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3227

_____

| | | |
|---|---|---|
| Oakley Bernard Engesser, | * | |
| | * | |
| Petitioner/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Robert Dooley, Warden, | * | |
| Yankton Minimum Unit, | * | |
| | * | |
| Respondent/Appellant. | * | |

_____

Submitted: May 17, 2012
Filed: July 27, 2012

_____

Before MURPHY, BENTON, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Before the court is Oakley Bernard Engesser's second federal habeas petition. Engesser was convicted of vehicular homicide and vehicular battery by a South Dakota jury and was sentenced to 25 years imprisonment. He claims that his trial counsel was ineffective for not calling two exculpatory witnesses and that previously undiscoverable evidence shows that he was not the driver of the car involved in the accident. The district court granted the petition after an evidentiary hearing, and respondent appeals. We reverse.

## I.

Engesser left the Full Throttle Saloon in Sturgis, South Dakota with Dorothy Finley around 6:00 p.m. on July 30, 2000. They drove off in Finley's red corvette, and around 8:10 p.m. their car collided with a minivan on an interstate highway. They had been traveling 112 miles per hour at the time, and their car rolled over several times before coming to rest upside down in the median. Finley was killed in the accident, and two of the minivan's occupants were injured. Engesser was found on the ground unconscious, and Finley's body was inside the car on the passenger side. According to one witness, Finley was lying face down against the roof of the car, in line with the passenger seat, with her feet underneath the dash board. At the time of the crash Finley's blood alcohol concentration was .102, and Engesser's was approximately .125. Engesser was later charged with one count of vehicular homicide and two counts of vehicular battery.

The main issue at trial was whether Engesser or Finley had been driving the corvette when it hit the minivan. The jury heard testimony from some witnesses who had stopped at the scene of the accident and observed that the driver side door was open. There was evidence that the passenger door was damaged and could not be opened and that the door window on that side had shattered and was completely gone, but the roof and front windshield were intact. Neither Finley nor Engesser had been wearing a seatbelt. The emergency room physician who treated Engesser testified that the person in the passenger seat would have suffered serious injuries because that side of the corvette was the point of impact with the minivan. Finley died of injuries to the right side of her head and body while Engesser was injured on both sides of his body. Finley's purse was found underneath the dashboard on the passenger side of the car, and her daughter testified that her mother normally kept her purse at her feet when she was a passenger.

Highway patrol officer Ed Fox was responsible for investigating the accident, but he arrived after Finley and Engesser had been moved. The first responding officers from the sheriff's department and the state highway patrol had not taken photographs of the positions in which the bodies were found. Fox testified at trial that he took statements from witnesses the night of the accident but that no one had been able to identify whether the driver was a man or woman. He opined that because the inside of the vehicle was compact, it was unlikely that the crash had flung the passengers around inside the car or that Engesser had been ejected through the passenger side window. Engesser was five inches taller than Finley, and Fox explained that the driver's seat was positioned so that someone of Engesser's height would have been comfortable in it. Fox also testified that Engesser had told him after the accident that Finley had been the driver, but he thought Engesser was lying.

Engesser did not testify at trial or present any witnesses, but the video recording of his interview with Fox was played for the jury. Engesser suffered brain damage in the accident, and he explained to Fox that he had no memory of the night after leaving the bar. While he stated that Finley had been driving when they left the bar, he agreed that it was possible they had switched before the accident. The trial court excluded hearsay testimony from Engesser's civil attorney that Sean Boyle, a security guard at the Full Throttle Saloon, had told him that he saw Engesser and Finley leave the bar the night of the accident and that Finley was driving. The jury found Engesser guilty, and the trial judge sentenced him to a total of 25 years on the three convictions.

Engesser appealed his convictions, challenging the exclusion of Sean Boyle's hearsay observations, the admission of Fox's opinion that Engesser had been lying when he said that Finley was driving, the admission of blood alcohol evidence, and the denial of his request for a particular jury instruction. The South Dakota Supreme Court affirmed his conviction. State v. Engesser, 661 N.W.2d 739 (S.D. 2003). Engesser subsequently filed a total of three state and two federal habeas petitions. His second federal petition is the one now before this court. In it Engesser claims that his

trial attorney was ineffective for not investigating witnesses Eric Eckholm and Charlotte Fowler or presenting them at trial. Their cars had been parked on the shoulder of the interstate at the time of the accident, and Engesser asserts that a jury would not have found him guilty if it had heard their exculpatory testimony. This claim is different from the ineffectiveness claim brought in his first federal habeas petition.

Engesser's first state habeas petition was filed in 2003. New counsel was appointed for him, and Engesser's petition included a claim that his trial counsel had been ineffective for not calling "all potential defense witnesses who witnessed the vehicle in question driven by the alleged victim, Dorothy Finley, rather than [Engesser]." Neither Eric Eckholm and Charlotte Fowler were mentioned as potential witnesses in this petition. Timothy Rensch, Engesser's trial counsel, indicated at an evidentiary hearing that his discovery information had included the name of Eric Eckholm. The record shows that a witness list provided by Officer Fox had also included Charlotte Fowler,[1] noting that her car had been parked on the side of the highway at the time of the accident. The state questioned Rensch about Eric Eckholm at the habeas hearing. Rensch responded that he had been aware of Eckholm as a potential witness before Engesser's trial but had not interviewed him because his statement the night of the accident had not identified the driver of the corvette. Rensch had apparently not believed that Eckholm had relevant information for Engesser's defense. He further testified that Eckholm had subsequently contacted him "after the appellant's argument was publicized" and told him then that he had "exculpatory information." Rensch did not agree with this assessment. The court denied the petition, and the South Dakota Supreme Court declined to review its decision.

---

[1]Charlotte Fowler was then known by her maiden name of Charlotte Delaney.

Engesser filed his first federal habeas petition pro se in 2004. He included a claim for ineffective assistance of trial counsel based on Rensch's failure to object to Fox's opinion testimony that Engesser had been lying when he had said that Finley was driving the car and Rensch's failure to request and present forensic evidence. The district court denied the petition. Engesser appealed and was appointed counsel who was contacted by Eric Eckholm after the appeal had been argued, but before this court issued its decision.

The federal appellate attorney took Eckholm's deposition. Eckholm testified that on the night of the accident he had seen the corvette before it hit the minivan, that the driver had been a woman, that her hair was "shoulder length" and "flying around," and that "she wasn't blonde." Eckholm also said that he saw a man in the passenger seat who was thrown through the roof of the car after it collided with the minivan. Eckholm described the corvette as rolling five or six times before coming to rest and said that the man landed 100 feet away. He also stated that the rear of the corvette struck the minivan, which was inconsistent with the physical evidence. The record indicates that the intact roof of the car was still in place after the crash.

Eckholm stated that he had heard about Engesser's case through news reports and had contacted Rensch. Rensch initially expressed interest in Eckholm's information but later told him that his client "was kind of a bad guy anyway[] . . . and that the cops wanted to put him away anyway[] because he was always in trouble." Eckholm explained to Engesser's first federal habeas attorney that he himself had "got[ten] a raw deal" in an encounter with the "Meade County police" and was concerned that Engesser was "being wronged by the highway patrolman." Counsel did not bring Eckholm's testimony to this court's attention before we affirmed the denial of his first § 2254 petition. Engesser v. Dooley, 457 F.3d 731 (8th Cir. 2006), cert. denied,127 S. Ct. 1284 (2007).

Engesser filed a second state habeas petition in 2006 based in part on Eckholm's deposition testimony. He was again represented by new counsel and now claimed that his trial attorney had been ineffective for failing to investigate Eckholm and Fowler and present their testimony. Engesser also claimed that his attorney in his first state habeas petition had been ineffective for not interviewing Eckholm and Fowler and for not bringing a related claim for ineffective assistance of trial counsel. South Dakota law required at that time that a state petitioner with a successive request for habeas relief had to show "reasonable cause" for failing to bring the claim in the previous petition before the state court could consider it. S.D.C.L. § 21-27-16.1 repealed by 2012 S.D. Sess. Laws, ch. 118, §6. An example of "reasonable cause" would have been ineffective assistance of prior habeas counsel. Jackson v Weber, 637 N.W.2d 19, 22–24 (S.D. 2001).

The South Dakota trial court held a hearing on the second state habeas petition. Eckholm and Fowler testified, as well as six other witnesses. Eckholm testified that his truck had broken down on the interstate highway and that Fowler had come to pick him up. Eckholm was standing on the shoulder behind his parked truck when he saw the corvette spinning out of control. He testified that it passed right by him and that he saw a woman "frantically steering." This time he described her as having blonde hair long "enough to fly in the air." He stated that he was able to see that the woman had been wearing bracelets and nail polish. (Physical evidence showed that Finley had been wearing a bracelet, but not nail polish.) Eckholm described the car as flipping two or three times.

Fowler testified that she had been sitting in the driver seat of her van parked on the shoulder in front of Eckholm's truck. She said that she saw the corvette traveling down the highway out of control and watched as the car hit the minivan. She then saw a man's leg and boot fly through the air after the impact. She explained that she recognized the corvette from having seen it in town earlier that day with a woman driving it "most" of the time. She described that woman as having shoulder length

-6-

blonde hair and admitted that she had not seen who was driving the corvette at the time of the accident. Fox's notes from several months after the accident indicate that on the night of the accident Fowler had said that she was looking at the console in her car and had not seen the corvette hit the minivan, that she looked up when she heard the crash, and then saw Engesser in the median. Fox's notes indicate that he had confirmed this account when he spoke with her again several months later.

Engesser's trial counsel, Timothy Rensch, was also called as a witness. He confirmed that he had become aware of Eckholm and Fowler as potential witnesses through materials prepared by Fox and received in discovery before trial. Rensch explained that he had asked Eckholm to describe the driver after he was contacted years later. Rensch considered Eckholm's description of the driver to be more consistent with Engesser's appearance than with Finley's, for Eckholm described the driver as having "shoulder length, light blond hair." At the time Rensch first met Engesser, he had had "longer bleach-blond hair that hung down" while Finley's hair appeared "very dark" in photographs.

Engesser's lawyer in his original state habeas petition appeared at the hearing. He testified that he first became aware of Eckholm as a potential exculpatory witness when Rensch mentioned him in the evidentiary hearing on that petition. The lawyer explained that his strategy had been to focus on known errors at trial rather than to investigate a possible claim related to what Eckholm or other witnesses had seen the night of the accident.

The state court granted habeas relief and ordered a new trial. It found that Eckholm and Fowler were credible witnesses, that their testimony was consistent with the physical evidence presented at trial, and that the state's evidence was weak. The court concluded that Engesser's trial counsel had been ineffective for failing to investigate Eckholm and Fowler and present their testimony at trial. It also decided

that Engesser's first habeas counsel had been ineffective for not developing the ineffective assistance of trial counsel claim.

Although Engesser had been granted a new trial by the state court, he moved to reopen the proceedings to present testimony from two additional witnesses the state had disclosed after the evidentiary hearing. The state trial court then held a hearing at which Greg Smeenk testified. According to Smeenk, he had been driving with his daughters on the interstate when he came upon the accident scene right after the crash. He stopped his car and approached the corvette. Smeenk said that he tried to get to a woman inside the car, but the passenger side door was lodged in the ground and would not open. He then went over to the driver side door and was able to pry it open. Smeenk reached in to take the woman's pulse and realized that she was dead. He departed without speaking to law enforcement because he did not want his daughters to see the accident scene.

According to Smeenk's testimony, the only point of exit from the car after the crash would have been through the shattered passenger window. His testimony, that he had opened the door on the driver side and left it open, appeared to conflict with the state's theory that Engesser had either been thrown out the door on the driver side or climbed out that way and then collapsed. That theory had been based in part on the testimony of witnesses at trial who reported that the driver's door had been open when they arrived at the site. The motion to reopen the record was nevertheless denied because at the time of Engesser's trial neither law enforcement officials nor Rensch could have known that Smeenk was a potential witness. Thus, Engesser's claims that his trial and habeas counsel had been ineffective could not be retroactively bolstered by Smeenk's testimony.

The state appealed the trial court's decision, and the South Dakota Supreme Court reversed. It concluded that Engesser had not met the state procedural requirement for bringing a successive petition because he had not shown that his first

habeas attorney was ineffective. Engesser v. Dooley, 759 N.W.2d 309, 314 (S.D. 2008). The court declined to "address the other issues raised by the State." Id.

Engesser then filed a third state habeas petition asserting a freestanding claim of actual innocence based on the new evidence from Smeenk and the proffered testimony from a second recently discovered witness about the location of Engesser's body at the accident scene. The trial court denied the petition. It concluded that state habeas relief was not available absent a constitutional error at trial. While the new evidence weakened the state's case, it was insufficient to show actual innocence. Engesser did not seek review by the South Dakota Supreme Court.

Engesser's pro se request to file a successive petition for federal habeas relief was granted in 2010 by an administrative panel of this court. In this petition he asserted that his trial counsel had been ineffective by failing to call Eckholm and Fowler as witnesses. Counsel was appointed for him. The federal district court then held a hearing on the petition. Eckholm, Fowler, and Smeenk testified consistently with their testimony in support of Engesser's state petition. Eckholm and Fowler described Finley's hairstyle somewhat differently at the federal hearing, however, stating that it was "frosted," with a mix of dark and light highlights, styled to give it volume, and not quite shoulder length.

Engesser also presented testimony from a new witness, Phillip Syverson, who testified that he had seen the corvette four minutes before the accident as it approached the interstate. Syverson traveled parallel with it for a quarter to a third of a mile as the corvette drove down the entry ramp. The corvette then accelerated "to [a] very high speed" and moved in front of his car. Syverson explained that he had been paying attention to the driver in order to determine whether he should speed up or slow down to allow the car to merge, but he had not noticed if there was a passenger in the car. He saw that the driver had feminine features and a feminine hairstyle which he described as "poofy," not long, and "medium brown." He thought

that the windows were up and did not notice hair "flying around." Syverson stopped when he reached the accident site but left without speaking to law enforcement officials because he had not witnessed the crash.

At the hearing Syverson was shown a picture of Finley taken around the time of the accident, and he responded that she could have been the driver. He also saw a picture of Engesser taken in the hospital depicting him with a moustache. Syverson testified that the driver had had "no facial hair" and that Engesser "couldn't have been [the driver], unless he was wearing a wig." It is not clear when Engesser or his counsel became aware of Syverson as a potential witness, but the record indicates that some four years before the hearing Engesser's cousin had learned that his coworker Syverson had seen the corvette just before the crash.

The district court concluded that Engesser had satisfied the requirements to bring his claim in a successive federal habeas petition, that the second state habeas court was the "last reasoned decision" of the state courts, and that its determination that Engesser had received ineffective assistance of trial counsel was not unreasonable. The district court granted Engesser's petition and ordered him to be released if the state did not bring new proceedings against him within two months. Respondent moved to stay the judgment pending appeal. The district court denied the motion and ordered Engesser released.

## II.

Engesser's habeas petition now before the court is his second under 28 U.S.C. § 2254. As a successive petitioner, Engesser must satisfy the requirements of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) before a federal court can consider his ineffective assistance of counsel claim. AEDPA provides in significant part that

(b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless–

****

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244.

Respondent argues that Engesser's petition should be dismissed under § 2244(b)(1) for raising a claim previously presented in a prior § 2254 habeas application. Engesser's first federal habeas petition included a claim that he had received ineffective assistance of counsel but it was based on his attorney's failure to object at trial to Officer Fox's testimony that Engesser was lying when he told him that Finley had been driving the corvette at the time of the accident and his attorney's failure to request and present DNA evidence. Engesser responds that his petition should not be dismissed under § 2244(b)(1) because his ineffectiveness claim in this petition is predicated on different facts than his prior § 2254 petition. This petition is based on counsel's failure to call exculpatory witnesses, and his only earlier petition containing a similar claim was in a state habeas case.

Our cases have addressed the question of whether an ineffective assistance of counsel claim is barred from federal review by examining the specific set of facts on which such claim is based. In Sloan v. Bowersox a successive habeas petitioner claimed ineffective assistance of counsel based on four different factual predicates, and we analyzed each as a separate claim. 77 F.3d 234, 234–36 (8th Cir. 1996). We determined that under the law preceding AEDPA the Sloan petitioner had not made out an exception to the bar on each of the successive ineffectiveness claims and that none of them could therefore be considered by a federal court. Id.; cf. McDonald v. Bowersox, 125 F.3d 1183, 1185–86 (8th Cir. 1997) (considering "factual predicate" to determine whether claim had been previously presented and therefore dismissal required under § 2244(b)(1)). Similarly, in Osborne v. Purkett we concluded that an ineffective assistance of counsel claim based on the failure to investigate certain exculpatory evidence was procedurally defaulted because a habeas petitioner "must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review" and the petitioner had not included the specific factual basis for that ineffectiveness claim in his appeal to the state court. 411 F.3d 911, 919 (8th Cir. 2005) (citation omitted).

Engesser's ineffectiveness claim in his first federal habeas petition was not based on the failure to call exculpatory witnesses but on his lawyer's failure to object to Officer Fox's opinion testimony. He did not allege in his prior § 2254 petition that he had received ineffective assistance of counsel based on his trial attorney's failure to investigate and call Eckholm and Fowler as witnesses. Because our cases look to the specific facts on which an ineffective assistance claim is based to determine whether it was presented previously, we conclude that Engesser's claim is not barred by § 2244(b)(1). See, e.g., Sloan, 77 F.3d at 234–36; see also Bishop v. Epps, 288 F. App'x. 146, 149–50 (5th Cir. 2008); Allen v. Massie, 236 F.3d 1243, 1245 & n. 2 (10th Cir. 2001); cf. Felder v. McVicar, 113 F.3d 696, 698 (7th Cir. 1997) (dismissing successive ineffectiveness claim based on identical facts but stating "[a] newly discovered factual basis" could support filing a new claim). But see Babbitt v.

Woodford, 177 F.3d 744, 746 (9th Cir. 1999) (dismissing ineffectiveness claim based on attorney's alcohol use because petitioner had previously filed an ineffectiveness claim based on attorney's failure to present mitigating evidence at penalty phase).

Under AEDPA, however, Engesser must also satisfy the requirements of § 2244(b)(2) before a federal court can consider the merits of his successive petition. This section allows a state petitioner to bring "[a] claim . . . in a second or successive habeas corpus application" that was not previously presented only if "the factual predicate for the claim could not have been discovered earlier through the exercise of due diligence," 28 U.S.C. § 2244(b)(2), (B)(i), and "the facts underlying the claim . . . would be sufficient to establish by clear and convincing evidence that, but for constitutional error" a reasonable factfinder would not have found the petitioner guilty. Id. § 2244(b)(2)(B)(ii). A claim relying on new evidence which does not meet both of these requirements must be dismissed. Id. § 2244(b)(2).

Engesser argues that he satisfied § 2244(b)(2) because he presented evidence of his innocence that was not previously discoverable and that this opened the door for federal review of his ineffective assistance claim even though that claim is based on evidence that would have been available at trial and at the time of his first federal habeas petition. The district court concurred after its sequential analysis of the requirements of § 2244(b)(2)(B)(i) and § 2244(b)(2)(B)(ii). It concluded that Engesser had met the requirements of § 2244(b)(2)(B)(i) because Syverson's testimony could not have been discovered earlier. It then analyzed the testimony of Eckholm and Fowler under § 2244(b)(2)(B)(ii) and determined that it was sufficient to establish by clear and convincing evidence that but for trial counsel's ineffectiveness for not calling them as witnesses, no reasonable factfinder would have found Engesser guilty.

A basic tenet of statutory construction provides that the statute in question must be read as a whole. United States v. I.L., 614 F.3d 817, 820–21 (8th Cir. 2010)

(quoting Sullivan v. Stroop, 496 U.S. 478, 482 (1990)). Section 2244(b)(2)(B) requires in subsection (i) that the "factual predicate for the claim" be new and in subsection (ii) that the "facts underlying the claim" show innocence. Read in context with the first provision in § 2244(b)(2) which speaks of "a claim," it is clear that both the requirements in § 2244(b)(2)(B)(i) and (ii) pertain to the "claim presented in a second or successive habeas corpus application." 28 U.S.C. § 2244(b)(2) (emphasis added). The only claim brought by Engesser in his second § 2254 petition was ineffective assistance of trial counsel for not investigating and calling witnesses Eckholm and Fowler. In order to satisfy § 2244(b)(2)(B)(i), the factual predicate for Engesser's ineffectiveness claim must not have been discoverable earlier through the exercise of due diligence. If the factual predicate of the claim is not new, § 2244(b)(2) requires that the claim be dismissed.

Police records turned over to Rensch before Engesser's jury trial included the names of Eckholm and Fowler in the list of witnesses. In the hearing on Engesser's first state habeas petition, Eckholm was also specifically identified and discussed as a witness and as offering "exculpatory information." That state hearing took place before the filing of his first federal habeas petition. The existence of Eckholm and Fowler as potential witnesses and the testimony they would have provided was therefore discoverable through the exercise of due diligence at the time Engesser filed his first § 2254 petition. Those available facts would have supported an ineffective assistance claim for his attorney's failure to investigate and present Eckholm and Fowler at that stage in his first federal petition. Engesser thus cannot satisfy the requirement of § 2244(b)(2)(B)(i) that the factual predicate of his claim was not previously discoverable, and he cannot bring this claim in a successive petition. Moss v. Hobbs, 444 F. App'x. 108, 109 (8th Cir. 2011); Roberts v. Bowersox, 170 F.3d 815, 816 (8th Cir. 1999).

The testimony of Syverson or Smeenk could not be the basis for Engesser's ineffectiveness claim, for trial counsel would not have been deficient for failing to

investigate witnesses who did not come forward until many years later. The claim he asserts relies instead on the investigation and presentation of exculpatory witnesses Eckholm and Fowler who were discoverable at the time of Engesser's first § 2254 petition.[2] Although Engesser proceeded pro se before the district court in that petition and in his request for authorization to bring a second federal habeas petition based on ineffective assistance of counsel, the record is what a federal court reviews in a successive petition. The requirement is clear that the factual basis for the constitutional claim must not have been discoverable at the time the first federal petition was filed. 28 U.S.C. § 2244(b)(2); Moss, 444 F. App'x. at 109. Engesser has failed to satisfy this requirement and his second § 2254 petition must be dismissed.[3]

## III.

After carefully reviewing the record and the factual basis for Engesser's ineffective assistance of trial counsel claim, we conclude that Engesser has not met AEDPA's requirements to bring his successive petition. Accordingly, we reverse the order of the district court granting Engesser a writ of habeas corpus and remand to the district court for further proceedings consistent with this opinion.

_____

---

[2] Engesser also did not include a freestanding claim of actual innocence in his second federal petition. See Herrera v. Collins, 506 U.S. 390 (1993); Roberts, 170 F.3d at 815.

[3] After concluding that the standard governing Engesser's petition was unclear, the district court also analyzed it under Schlup v. Delo, 513 U.S. 298, 326–27 (1995), which allows for federal review of a procedurally defaulted constitutional claim if the petitioner can show actual innocence. Because this is a successive § 2254 petition, the requirements set out in AEDPA control federal review of Engesser's claim. House v. Bell, 547 U.S. 518, 539 (2006).